UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                          :

KARIN WOLF,                               :

                    :      23-cv-10905

          Plaintiff,         :      ECF Case

                    :

        - against -       :

                    :      **COMPLAINT**

LINDA LONDON LTD. and LINDA LONDON,  :      **AND JURY DEMAND**

                    :

                    :

         Defendants.        :

                    :
------------------------------------------------------------x

Plaintiff Karin Wolf, by her attorneys, Bantle & Levy LLP, as and for her complaint against Defendants Linda London Ltd. and Linda London, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for sexual harassment and unlawful retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. (the "NYCHRL").

2.      Plaintiff also asserts claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and the New York Labor Law, NYLL § 190 *et seq.*, 650 *et seq.*, and § 740 *et seq.*, for, *inter alia*, failure to pay overtime wages and unlawful retaliation.

3.      Plaintiff seeks declaratory relief and damages.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1331.

5.     This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as her FLSA claims.

6.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship) insofar as the amount in controversy exceeds $75,000 and the action is between citizens of different states.

7.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the asserted claims occurred herein.

## PARTIES

8.     Plaintiff Karin Wolf is a citizen of the State of Connecticut and currently resides in Fairfield, Connecticut.

9.     Upon information and belief, Defendant Linda London Ltd. (the "Company") is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 220 E 60th St, Suite 7L, New York 10022.

10.     At all times relevant herein, the Company is and was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), the NYLL, NYLL §§ 190(3), 651(6), and 740(b), the NYSHRL, N.Y. Exec. L. § 292(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

11.     At all times relevant herein, Karin Wolf was a non-exempt "employee" of the Company within the meaning of the FLSA, 29 U.S.C. § 203(e), and the NYLL, NYLL §§ 190(2), 651(5), and 740(a).

12.     Upon information and belief, Linda London is a citizen of the State of New York and currently resides in New York, New York.

2

13.     Upon information and belief, at all times relevant herein, Linda London is and was a "person" within the meaning of the NYSHRL, N.Y. Exec. L. § 292(1), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

## STATEMENT OF FACTS

**Wolf's Initial Employment at the Company**

14.     Wolf commenced employment with the Company as a bookkeeper in or about April 2022.

15.     Upon information and belief, the Company is an interior design firm.

16.     At all times relevant herein, Wolf was supervised in the performance of her duties by Defendant Linda London, the Company's Founder.

17.     Wolf was initially hired as an independent contractor with the Company working a part-time schedule.

18.     Her primary responsibility during this initial phase of her employment with the Company was bookkeeping.

19.     Approximately one week after Wolf commenced employment with the Company, it became clear to both Wolf and London that a part-time schedule was insufficient to meet the Company's bookkeeping needs.

20.     On or about April 29, 2022, Wolf received a full-time job offer from another company and duly informed London of that offer.

21.     Shortly thereafter, London offered Wolf a full-time position with the Company.

22.     On or about April 30, 2022, Wolf accepted the Company's offer and began working for the Company in a full-time capacity, with the position title of Studio Director.

23.     In her capacity as a Studio Director, Wolf's primary function was bookkeeping.

24.     In addition to bookkeeping, Wolf was also responsible for sorting mail and completing discrete administrative tasks assigned by London.

25.     Throughout her tenure at the Company, Wolf provided accurate and reliable bookkeeping services for the Company, under London's direct supervision and management.

26.     Throughout her tenure with the Company, Wolf's performance met and/or exceeded expectations set for her role.

**<u>Misclassification of Wolf's Employment</u>**

27.     Although Wolf provided consistent and reliable services to the Company on a full-time basis, which effectively left no time for her to hold another job or perform work for any other employer, the Company improperly classified Wolf as a freelancer and failed to provide her with overtime pay and/or benefits.

28.     Wolf received her tasks and work directly from London and the Company's Project Manager, Otilia Enica.  Collectively, London and Enica supervised and directed Wolf's work at all times.

29.     The Company and London exercised a high degree of control over Wolf's work, including by providing detailed instructions and dictating the substance of Wolf's work and the hours she worked.

30.     For example, the Company provided Wolf explicit direction on how to perform the key elements of her work, including how and what to bill clients, and how and when to communicate with particular clients and vendors to collect payments.

31.     In addition, Wolf acted as a representative for the Company and was provided with Company credit cards, keys to the office, and a Company email address.

32.     The Company set Wolf's work locations and hours, including on many occasions demanding Wolf physically be present and working in the Company's office in New York City.

33.     Plaintiff was an employee of the Company under the Internal Revenue Code § 3121(d)(2), which provides, in pertinent part, that "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

34.     Wolf was, as a matter of law and fact, an employee of the Company.  In addition to the already stated facts, the following are indicia of her status as an employee under the common law:

      a.   Wolf did not work on a temporary basis;

      b.   Wolf's work was continuous, not intermittent;

      c.   The type of work performed – bookkeeping services – was an integral part of the regular business of the Company, and Wolf's specialized skill as a bookkeeper was fundamental to the business of the Company; and

      d.   Wolf could not realize profits and losses independent from the Company, and she depended upon her regular payments from the Company for her income.

35.     The Company misclassified Wolf as an independent contractor.

36.     As a result of the Company's willful misclassification of Wolf's employment status with the Company, Wolf was denied benefits and other perquisites of employment that she would have been entitled to had she not been misclassified.

37.     The Company never provided Wolf with any IRS form for 2022, despite her having worked for the Company during that year.

38.     In failing to classify Wolf as an employee, the Company also failed to contribute to Wolf's social security account and forced her to incur additional tax expenses and liabilities while the Company saved money it was legally obligated to pay.

39.     In failing to classify Wolf as an employee, the Company failed to pay Wolf at an overtime rate for her hours worked over 40 hours per week, which she regularly reported to the Company.

40.     The Company misclassified Wolf, in whole or in substantial part, to avoid the cost and tax implications of providing her full wages, employee benefits, and overtime pay.

41.     Upon information and belief, the Company engaged in a pattern and practice of misclassifying employees, like Wolf, as independent contractors.

**The Company Failed to Pay Wolf Overtime Pay**

42.     As a bookkeeper and based upon the type of services Wolf provided, she was a non-exempt employee at the Company.

43.     As a non-exempt employee of the Company, Wolf was entitled to overtime wages at a rate of time-and-a-half for work she performed in excess of forty (40) hours per workweek.

44.     Wolf's pay each week was based on the number of hours she reported on her timesheets, which she submitted to London for review and approval on a weekly basis.

45.     Due to the volume and breadth of the bookkeeping services required by the Company, Wolf often worked over 40 hours per week.

46.     On average over the course of her employment from April 30, 2022 through January 2023, Wolf worked approximately 44 hours per week.

47.     However, the Company refused to pay Wolf at the legally-required overtime rate for her overtime hours and instead compensated her for that time at her standard hourly rate of $58.00.

48.     Accordingly, the Company failed to pay Wolf overtime wages due and owing her in an amount no less than $12,528.00.

**Defendants Subjected Wolf to a Hostile Work Environment**

49.     Throughout her employment, Wolf was repeatedly subjected to inappropriate and sexually-charged remarks and conduct in the workplace by the Company's founder, London.

50.     On one occasion, London stated to Wolf, "you have bigger tits than me" while speaking to Wolf and staring at Wolf's chest.

51.     The Company's Project Manager, Enica, witnessed this comment.

52.     Wolf ignored that comment but was extremely embarrassed by London's egregiously inappropriate sexual remark.

53.     On another occasion, London spoke to Wolf about watching pornography and then attempted engaging Wolf and Enica in a workplace conversation about pornography.

54.     Both Wolf and Enica declined to participate in the conversation and ignored London.

55.     On another occasion, London told Wolf that she (London) was "Jewish by injection," referencing her history of sexual relations with Jewish partners.

56.     In another instance, London told Wolf that she "tweaked Dolly Parton's titty" at an event.

57.     On several occasions, London told Wolf that she had engaged in sadomasochism ("S&M") with her ex-husband after going to an S&M sex show in New York City.  Despite

Wolf's repeated efforts to end the conversation, London described in detail the acts that she and her husband had engaged in following the sex show.

58.     London also recounted to Wolf her participation in a "person-on-person orgy-train" at a club called Plato's Retreat in the 1970's and her engagement in an "orgy pit" there.

59.     Wolf was extremely upset and offended by London's repeated attempts to engage her in sexually explicit conversation.

60.     To the best of her ability, Wolf attempted to ignore and/or rebuff these and other comments by London that were of a sexual nature.

61.     On several occasions, Wolf explicitly asked London to stop making sexual remarks towards her, but London always ignored these requests.

62.     London became frustrated or irritated when Wolf declined to participate in sexually explicit conversations.

63.     In addition, London became physically aggressive with Wolf on a number of occasions.

64.     Several times London grabbed Wolf by the arm, causing Wolf physical pain.

65.     Though Wolf clearly objected to London's sexual harassment and physical aggression, Wolf's efforts to get London to cease and desist this unlawful conduct were unsuccessful.

66.     By repeatedly making sexually suggestive comments in the workplace and objectifying Wolf's body, London created a hostile work environment and caused Wolf to sustain severe mental and emotional harm and distress as a result.

**<u>Wolf Objects to the Company's Illegal Activities</u>**

67.     During Wolf's employment with the Company, she witnessed several practices that she believed to be illegal and unethical.

68.     For instance, London regularly instructed Wolf to prepare and send deceptive or inaccurate bills to clients.

69.     Wolf objected to this practice and informed London that the Company could face legal trouble for misrepresenting financial records in that way, but London continued to direct her to create and distribute falsified invoices.

70.     On one such occasion, London asked Wolf to re-send an invoice to a client who was disputing whether the work claimed on the invoice had actually been performed.

71.     The original bill had been sent before Wolf began working at the Company. Upon receiving the original bill, the client questioned whether London had performed any work for the client on the date listed on the invoice.

72.     Wolf and London checked London's calendar on the date in question and found that London had been working for a different client that day and had done no work for the client being billed.

73.     Wolf advised London that the Company should inform the client there was a billing error and apologize, but London refused. She instructed Wolf to re-send the bill and said she would send the client documentation that the work was performed on that date.

74.     On another occasion, one client was late in paying for services rendered by the Company. When Wolf attempted to collect on the overdue balance, the client requested that the Company resend the bill but address it to a separate third-party entity.

75.     Wolf informed London of the request and questioned whether an invoice reflecting work done for one client should be sent to a separate entity with which the Company did not have a contract.

76.     London instructed Wolf to do as she was told, stating, "Just do what you have to do to get paid."

77.     In addition, Wolf held a good-faith belief that multiple employees of the Company, including herself and Enica, had been improperly classified as independent contractors.

78.     Wolf repeatedly told London that she believed that she and these colleagues were "employees," and that the misclassification of their employment status was a violation of the law.

79.     In addition, Wolf flagged to London that the Company had failed to distribute appropriate tax forms to employees and contractors in past years.  Wolf asked London's permission to rectify this error but London refused.

80.     On many occasions, when Wolf raised these objections to London, London reacted with hostility and acknowledged to Wolf that she had previously misclassified a former employee and did not want to be in trouble again.

81.     At other times, London was indifferent to Wolf's objections and told her to leave it alone or said that she (London) would take care of it herself.

82.     Upon information and belief, London never took steps to correct any of the unlawful and improper practices to which Wolf objected.

**The Company Abruptly Terminates Wolf's Employment Without Justification**

83.     In early January 2023, Wolf took approximately one week off for vacation.

84.     When Wolf returned from her vacation, she found that she was unable to sign into her Company accounts.

85.     On January 13, 2023, Wolf reached out to London to explain that she was unable to access her accounts and requested assistance.

86.     Later that day, Wolf received an email saying she was "fired as a bookkeeper" and "no longer work[ed] for Linda London Ltd."

87.     Wolf never received an explanation for the abrupt termination of her employment.

88.     As of the time of her termination, Wolf had received only praise for her work and had received no performance warnings or negative appraisals of any kind.

89.     Throughout her employment with the Company, Wolf repeatedly raised complaints internally about its unlawful and problematic practices and those of its founder, London.

90.     Upon information and belief, London became angry with Wolf in response to Wolf's objections to the Company's unlawful practices and policies.

91.     Upon information and belief, London also grew hostile toward Wolf for refusing to engage in sexually suggestive conversations with her.

92.     Upon information and belief, the Company terminated Wolf's employment because Wolf objected to its unlawful practices, such as its misclassification of its employees, refusal to send its employees tax documents they were entitled to, and fraudulent billing practices.

93.     Upon information and belief, London was also motivated to remove Wolf from the Company because Wolf was not receptive to London's sexually inappropriate and harassing conversation and behavior.

94.    Wolf was subjected to differential and adverse workplace treatment by London in the form of sexually harassing comments and conduct on the basis of her gender.

95.    Wolf's objection to this discriminatory treatment was met with hostility by London, and Wolf's opposition to workplace discrimination was a motivating factor in the Company's decision to terminate her employment.

96.    As a result of Defendants' discriminatory and retaliatory termination of Wolf, Wolf was denied income, benefits, and other perquisites of employment, including continuing opportunities for promotion, advancement, recognition, and increased compensation that she otherwise would have received had she not been terminated.

97.    As a result of Defendants' discriminatory and retaliatory termination of Wolf, Wolf has sustained mental and emotional harm and distress.

**The Company Fails to Pay Wolf Wages Due and Owing**

98.    In addition, Wolf worked two-and-a-half days for the Company in January 2023 but was never paid for those days of work.

99.    Accordingly, the Company failed to pay Wolf the minimum hourly wage she was entitled to for her work on those days.

100.    The Company has failed to pay Wolf wages due and owing in an amount no less than $1,900 for the days she worked in January 2023 prior to the termination of her employment.

101.    The actions of the Defendants described above were undertaken willfully, intentionally, maliciously and with reckless indifference to Wolf's protected rights.

**FIRST CAUSE OF ACTION**
*Sexual Harassment in Violation of the NYSHRL Against the Company*

102.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

103.    As a result of their aforesaid acts, the Company sexually harassed Wolf in violation of the NYSHRL, N.Y. Exec. L. § 296(1).

104.    As a result of the Company's unlawful acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SECOND CAUSE OF ACTION
### *Aiding, and Abetting Sexual Harassment in Violation of the NYSHRL Against London*

105.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

106.    As a result of their aforesaid acts, London abetted, incited, compelled and coerced acts forbidden under the NYSHRL, N.Y. Exec. Law §296(1), in violation of the NYSHRL, N.Y. Exec. Law § 296(6).  Specifically, London has aided, abetted, incited, compelled and/or coerced the sexual harassment Wolf was subjected to.

107.    As a result of London's unlawful acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## THIRD CAUSE OF ACTION
### *Sexual Harassment in Violation of the NYCHRL Against Defendants*

108.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

109.    As a result of its aforesaid acts, Defendants subjected Wolf to sexual harassment in violation of the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq*, including § 8-107(1)(a).

110.    As a result of Defendants' discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## FOURTH CAUSE OF ACTION
### *Retaliation in Violation of the NYSHRL Against the Company*

111.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

112.    As a result of its aforesaid acts, the Company retaliated against Wolf for opposing discrimination in the workplace in violation of the NYSHRL, N.Y. Exec. L. § 296(7).

113.    As a result of the Company's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION
### *Aiding and Abetting Retaliation in Violation of the NYSHRL*
### *Against London*

114.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

115.    As a result of her aforesaid acts, London aided, abetted, incited, compelled and coerced acts forbidden under the NYSHRL, N.Y. Exec. Law §296(7), in violation of the NYSHRL, N.Y. Exec. Law § 296(6).  Specifically, London has aided, abetted, incited, compelled and/or coerced retaliation against Wolf for opposing discrimination in the workplace in violation of the NYSHRL.

116.    As a result of London's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

## SIXTH CAUSE OF ACTION
### *Retaliation in Violation of the NYCHRL Against the Company*

117.     Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

118.     As a result of its aforesaid acts, the Company retaliated against Wolf for opposing discrimination in the workplace in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(7).

119.     As a result of the Company's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

## SEVENTH CAUSE OF ACTION
### *Aiding and Abetting Retaliation in Violation of the NYCHRL*
### *Against London*

120.     Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

121.     As a result of her aforesaid acts, London aided, abetted, incited, compelled and coerced acts forbidden under the NYCHRL, N.Y.C. Admin. Code § 8-107(7), in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(6). Specifically, London has aided, abetted, incited, compelled and/or coerced retaliation against Wolf for opposing discrimination in the workplace in violation of the NYCHRL.

122.     As a result of London's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

15

## EIGHTH CAUSE OF ACTION
### *Failure to Pay Overtime Wages in Violation of the FLSA*
### *Against the Company*

123.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

124.    At all times relevant herein, the Company was Wolf's "employer," and Wolf was an "employee" of the Company within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and (e).

125.    At all times relevant herein, the Company had gross annual revenues in excess of $500,000.

126.    From approximately April 2022 through January 2023, Wolf often worked in excess of forty (40) hours per workweek for the Company.

127.    The Company failed to pay Wolf overtime compensation at a rate of not less than one-and-one-half (1 ½) times their regular rate of pay for each hour she worked in excess of forty (40) hours per workweek in violation of the FLSA, 29 U.S.C. 207(a)(1).

128.    The Company had no reasonable grounds for believing its failure to pay Wolf overtime compensation was not a violation of the FLSA.  Rather, the Company's failure to pay Wolf the overtime compensation to which she was entitled was willful and not in good faith.

129.    Wolf has been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### *Failure to Pay Minimum Wage in Violation of the FLSA*
### *Against the Company*

130.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

131.    At all times relevant herein, the Company was Wolf's employer, and Wolf was an employee of the Company within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and (e).

132.    At all times relevant herein, the Company had gross annual revenues in excess of $500,000.

133.    In January 2023, Wolf worked approximately 20 hours for the Company

134.    The Company failed to pay Wolf for these hours in violation of the FLSA, 29 U.S.C. 206(a)(1)(C).

135.    The Company had no reasonable grounds for believing its failure to pay Wolf minimum wage was not a violation of the FLSA.  Rather, the Company's failure to pay Wolf the minimum compensation to which she was entitled was willful and not in good faith.

136.    Wolf has been damaged in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
*Failure to Pay Overtime Wages in Violation of the NYLL*
*Against the Company*

137.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

138.    At all times relevant herein, the Company was Wolf's "employer," and Wolf was an "employee" of the Company within the meaning of the NYLL, NYLL §§ 651(5) and (6).

139.    From approximately April 2022 through January 2023, Wolf often worked in excess of forty (40) hours per workweek for the Company.

140.    The Company failed pay Wolf overtime compensation at a rate of not less than one-and-one-half (1 ½) times her regular rate of pay for each hour she worked in excess of forty (40) hours per workweek in violation of the NYLL and its implementing regulations. *See* NYLL § 160(3), 12 NYCRR § 142-2.2.

141.    The Company had no reasonable grounds for believing its failure to pay Wolf overtime compensation was not a violation of the NYLL.  Rather, the Company's failure to pay Wolf the overtime compensation to which she was entitled was willful and not in good faith.

142.    Wolf has been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### *Failure to Pay Wages in Violation of the NYLL*
### *Against the Company*

143.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

144.    At all times relevant herein, the Company was Wolf's "employer," and Wolf was an "employee" of the Company within the meaning of the NYLL, NYLL §§ 651(5) and (6).

145.    In January 2023, Wolf worked approximately 20 hours for the Company.

146.    The Company failed to pay Wolf for these hours in violation of the NYLL, NYLL §§ 193 and 652(1).

147.    The Company had no reasonable grounds for believing its failure to pay Wolf for these hours was not a violation of the NYLL.  Rather, the Company's failure to pay Wolf the compensation to which she was entitled was willful and not in good faith.

148.    Wolf has been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### *Retaliation in Violation of the NYLL Against the Company*

149.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

150.    As a result of its aforesaid acts, the Company retaliated against Wolf for objecting to conduct Wolf reasonably believed to be in violation of law, rule, or regulation, in violation of the NYLL, NYLL § 740 *et seq.*

151.    As a result of the Company's retaliatory and adverse acts, Plaintiff suffered

damage, including without limitation, emotional pain, suffering, inconvenience, mental anguish,

humiliation, and loss of enjoyment of life.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

**WHEREFORE,** Plaintiff respectfully request that the Court grant judgment for Plaintiff

and that it order and award Plaintiff the following relief against Defendants:

(1)    A declaratory judgment that the acts, policies, practices, and procedures

complained of herein violated Plaintiff's rights as secured by the NYSHRL, N.Y. Exec. Law §

290 *et seq*., the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq*., the FLSA, 29 U.S.C. § 201 *et

seq.* (the "FLSA"), and the NYLL, NYLL §§ 190 *et seq., 650 et seq.*, and 740 *et seq.*

(2)    Reinstatement to the highest position to which Plaintiff was entitled and/or front

pay;

(3)    Actual damages in the form of:

a.  back pay with interest based on Plaintiff's appropriate compensation had she not

been terminated;

b.  unpaid wages, including overtime compensation; and

c.  reimbursement for lost bonuses, stock, health benefits, 401K contributions, social

security, experience, training opportunities, and other benefits, in an amount to be

proved at trial;

(4)    Compensatory damages for emotional pain and suffering, inconvenience, mental

anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to

exceed $250,000;

(5)     Liquidated damages and penalties as provided for by the FLSA and NYLL in an

amount to be shown at trial;

(6)     Punitive damages in an amount not less than $500,000;

(7)     Statutory attorneys' fees, costs and disbursements;

(8)     Interest; and

(9)     Such additional relief as the Court deems just and proper.


Dated: December 15, 2023
       New York, New York

                              BANTLE & LEVY LLP

                              */s/ Sherie N. Buell*
                              Sherie N. Buell
                              H. David Krauss
                              99 Park Avenue, Suite 1510
                              New York, NY 10016
                              (212) 228-9666
                              *Attorneys for Plaintiff*